UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/16
```

------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,             15 Cr. 721

    -against-                  OPINION

CARL LIGHTS,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        PREET BHARARA
        U.S. Attorney for the S.D.N.Y.
        One St. Andrew's Plaza
        New York, NY 10007
        By:  Jilan J. Kamal, Esq.

        Attorneys for Defendant

        PELUSO & TOUGER, LLP
        70 Lafayette Street
        New York, NY 10013
        By:  David Touger, Esq.

**Sweet, D.J.**

Defendant Carl Lights ("Lights" or the "Defendant") has moved pursuant to the Fourth Amendment to suppress the evidence obtained by the Government after a traffic stop and after the issuance of a search warrant and his statements made following his arrest. Based on the findings and conclusions set forth below, the motion is denied.

**Prior Proceedings**

Lights was indicted on October 21, 2015 for three counts of being a felon in possession of a firearm; one count of narcotics possession with intent to distribute; and one count for the use, carrying, or possession of a firearm during or in relation to a drug trafficking crime.  His final, superseding indictment, entered August 25, 2016, added a second count of narcotics possession with intent to distribute.

On May 3, 2016, Lights filed a motion to suppress the fruits of the search of his automobile, home, and office and the statements he made to law enforcement. The motion submits that there was no evidence of any traffic violation by Lights —

1

Lights argues that there is no stop sign in the vicinity of the area where he was stopped, that he provided a sworn affidavit stating that he stopped at every stop sign and traffic light along his route, and that law enforcement failed to identify the location of the stop sign in question. Additionally, the motion submits that the affidavit in support of the application for the search warrant does not contain specific facts connecting Lights' apartment or place of business to the alleged criminal activity, and that Lights clearly and unequivocally asked for an attorney during questioning by law enforcement but continued to be interrogated.

A factual hearing on the motion was held on September 12 and 13, 2016.

**The Facts**

The facts are adduced from the affidavit of Lights and the testimony of three officers of the New York Police Department ("NYPD") including exhibits admitted into evidence.

On or about September 29, 2015, NYPD Sergeant Michael Eichner ("Sergeant Eichner") was conducting surveillance in an

2

unmarked vehicle parked on the west side of Cruger Avenue, a
one-way street in the Bronx. After having learned of Lights'
criminal activity and his possession of a firearm, Sergeant
Eichner observed Lights walking on the east side of the street,
carrying, among other things, two plastic shopping bags, one of
which was black, and two messenger bags. Sergeant Eichner lost
sight of Lights and started to circle the block in his vehicle
in an effort to regain contact.

Half a block away, NYPD Officer Kevin Noonan ("Officer
Noonan") and his partner NYPD Officer Gregory Hernandez
("Officer Hernandez"), who were also conducting surveillance in
an unmarked police car (the "Unmarked NYPD Police Car"), were
parked in the vicinity of the intersection of Cruger Avenue and
Pelham Parkway North. Sergeant Eichner advised Officers Noonan
and Hernandez what he had observed. Minutes later, Noonan saw a
gray, 2004-model Range Rover (the "Vehicle"), which he knew to
be Lights' vehicle, approach the intersection of Cruger Avenue
and Pelham Parkway North. Both officers observed the Vehicle
make a right turn from Cruger Avenue onto Pelham Parkway North
without stopping at the stop sign on the corner.

After Officer Noonan saw the Vehicle turn right onto
Pelham Parkway North without stopping at the stop sign, he and
Officer Hernandez began to follow the Vehicle westbound on
Pelham Parkway, turning left on Waring Avenue and then north on
White Plains Road. After a few blocks, when the Vehicle reached
an appropriate stopping area, Officer Noonan turned on his
lights and siren, and the Vehicle pulled over into the parking
lot of a gas station.

As Officer Hernandez approached on the passenger's
side of the Vehicle, Lights lowered the front passenger window,
and Officer Hernandez detected a strong odor of marijuana
emanating from the Vehicle. Through the open front passenger
window, Officer Hernandez saw a black plastic shopping bag on
the front passenger seat, the top of which was open. Inside the
black shopping bag, Officer Hernandez saw a large, clear plastic
bag resembling a Ziplock bag that appeared to be filled with
marijuana.

Officer Hernandez then heard Officer Noonan instruct
Lights to exit the Vehicle. Lights became agitated and refused
to comply and simultaneously began to roll up the windows of the
Vehicle. Officer Hernandez saw Lights reach for the gear shift,

4

and Officer Hernandez opened the passenger door to stop Lights from fleeing. The passenger door opened and, as Lights drove away, the black plastic shopping bag that had been resting on the front passenger seat fell out.

During the car chase that ensued, Officer Hernandez saw Lights throw a black object from the front passenger window of the Vehicle in the vicinity of Waring Avenue and Mace Avenue.

Several blocks later Lights pulled over and was placed under arrest. NYPD officers recovered $621 in cash from Lights' person and 228 tablets of a substance later determined to be oxycodone, which were found loose in a paper bag inside a messenger bag found inside the Vehicle. Responding officers to the arrest scene retrieved the black plastic shopping bag at the gas station, and an NYPD laboratory later determined that the dried plant matter inside weighed more than one pound and tested positive for marijuana. Responding officers also located a loaded, black, .380 caliber Smith & Wesson pistol on the east side (northbound) of Bronx Parkway East between Waring Avenue and Mace Avenue.

Lights was transported to the 49th Precinct. While at the precinct, Lights participated in an interview with NYPD Detective David Kelly ("Det. Kelly"), which was videotaped. At the outset of the interview, Lights was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), which were read aloud to him by the interviewing detective. The following exchange took place:

| | |
|---|---|
| Det. Kelly: | You have the right to remain silent and to refuse any questions. Do you understand? |
| Lights: | Yes. |
| Det. Kelly: | Anything you do say may be used against you in a court of law. Do you understand? |
| Lights: | Yes. |
| Det. Kelly: | You have the right to consult an attorney before speaking to the police and to have an attorney present during your questioning now or in the future. Do you understand? |
| Lights: | Yes. Can I call my attorney? |
| Det. Kelly: | Of course you can. |
| Lights: | I ain't gonna call him yet, but I need to call a couple, a couple different... |
| Det. Kelly: | [begins to speak] |
| [Overtalk] | |
| Lights: | [waves off detective] |
| Det. Kelly: | If you want to call him, we can call him. |

```
Lights:        No, know what I'm saying, we can, we can
               speaking ... then I'd like to call.

Det. Kelly:    Ok. If you cannot afford an attorney, one
               will be provided for you, without cost. Do
               you understand?

Lights:        Yes, I do.

Det. Kelly:    If you do not have an attorney available,
               you have the right to remain silent until
               you've had the opportunity to consult one.
               Do you understand?

Lights:        Yes, I do.

Det. Kelly:    Now that I have advised you of your rights,
               are you willing to answer questions?

Lights:        [Gesturing] Yeah, the reason why I could
               answer questions is I could refuse anytime.

Det. Kelly:    Yeah. Are you willing to answer questions,
               yes or no?

Lights:        Yes, yeah.

Det. Kelly:    Ok.
```

A search warrant application was subsequently prepared.  Special Agent Christopher Quinn ("Agent Quinn") of the Department of Homeland Security, Homeland Security Investigations ("HSI") executed an affidavit in support of the warrant application to search Lights' apartment (the "Apartment") and his business, C&J Computer and Cell Phone Doctors (the "Store") in the Bronx.

Agent Quinn summarized in his affidavit the facts surrounding the arrest of Lights on September 29, 2015, including Sergeant Eichner's observation of Lights with the black plastic shopping bag. Agent Quinn stated that, based on his training and experience, drug dealers often store their product, as well as firearms, cash, and other indicia of narcotics trafficking, in a secure location such as an apartment or office over which the drug dealer has control. Agent Quinn also stated that, based on his review of telephone calls placed by Lights while in custody at the Vernon C. Bains Center, a New York Department of Corrections facility, there was probable cause to believe that Lights was the only person with a full set of keys to the Apartment.  During several of these calls, Lights indicated that he was the only one with keys to "the bottom lock," which Agent Quinn understood to mean that Lights was the only one with access and control over the Apartment.

He therefore concluded that there was probable cause to believe that Lights stored the marijuana in his Apartment; had brought the marijuana down to the street in the black plastic shopping bag; and had placed the black plastic shopping bag on the front passenger seat of the Vehicle, where it was

8

observed during the traffic stop and later recovered at the gas station.

Agent Quinn further stated in his affidavit that the social media websites associated with the Store provided probable cause to believe that evidence and instrumentalities of narcotics trafficking and firearms would be found at the Store, that the Twitter feed of the Store contains various photographs of the interior and exterior of the store interspersed with photographs of Lights smoking what appears to be marijuana, a jar full of a substance that appears to be marijuana, as well as rolling papers and a lighter. Based on his training and experience, Agent Quinn concluded that there was probable cause to believe that Lights used the Store to stash and to distribute marijuana, and reiterated that drug dealers often keep firearms in a secure location over which they have control, such as the Store.

Agent Quinn's affidavit also set forth the reasons why he had concluded that the Store was a secure area within Lights' control: the Twitter homepage of the contained the following slogan, next to a close-up photograph of Lights: "SELF MADE, FUCK YOU PAY ME, SELF PAID, FUCK YOU PAY ME. EX CON-OH YEA NOW I

OWN-SO FUCK YOU PAYME. THE BAD GUY HAS ARRIVED. YEA I DO SELL
AND REPAIR PHONES," noting that the "ex con" and "bad guy"
alluded to in the slogan likely referred to Lights, who was
convicted in the Southern District of New York of violations of
Title 21, United States Code, Section 846, and Title 18, United
States Code, Sections 922(g) and 924(c) in 2007.

On October 6, 2015, Magistrate Judge James C. Francis
IV issued a search and seizure warrant authorizing federal
agents to search the Apartment and the Store for evidence and
instrumentalities of narcotics trafficking and firearms in
violation of Title 21, United States Code, Sections 841(a)(1)
and 846, and the use of firearms in violation of Title 18,
United States Code, Section 924(c).

**The Applicable Standard**

The Second Circuit "ha[s] held repeatedly that a
traffic stop based on reasonable suspicion of a traffic
violation comports with the Fourth Amendment." *United States v.
Steward*, 551 F.3d 187, 191 (2d Cir. 2009) (internal citations
omitted). "[R]easonableness is evaluated from an objective
standard." *Holeman v. City of London*, 425 F.3d 184, 190 (2d Cir.

10

2005) (citing *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir. 1998) ("[A]n observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation.")). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Wren v. United States*, 517 U.S. 806, 813 (1996). Under New York law, it is a traffic violation for a driver to approach a stop sign and fail to stop a vehicle "before entering the crosswalk on the near side of the intersection." N.Y. Veh. & Traf. Law § 1172(a). The Second Circuit has specifically upheld traffic stops in which the defendant's failure to stop at a stop sign justified the stop. Steward, 551 F.3d at 189. The Supreme Court has observed that "[t]he foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations." *Wren*, 517 U.S. at 818 (internal citations omitted).

When faced with a request for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A court should consider the totality of the circumstances in its

assessment of whether a fair probability exists. *United States v. Clark*, 638 F. 3d 89, 94 (2d Cir. 2011). The facts alleged in affidavits supporting a search warrant must be evaluated "practically and in a commonsense fashion." *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983). The Court must "accord substantial deference to the magistrate's finding and limit [its] review 'to whether the issuing judicial officer had a substantial basis for the finding of probable cause.'" *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004) (internal citations omitted); *United States v. Jakobetz*, 955 F.2d 786, 803 (2d Cir. 1992), cert. denied, 61 U.S.L.W. 3257 (1992). The prior finding of probable cause is a weighty factor that favors affirming a finding of probable cause. *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980) (per curiam), cert. denied, 445 U.S. 966 (1980). Close cases are properly resolved in favor of upholding the prior judicial officer's determination. *Jakobetz*, 955 F.2d at 803; *Travisano*, 724 F.2d at 345.

"If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, (2010)

(internal quotation marks and citations omitted). "For a suspect to invoke his *Miranda* right to counsel, he must at a minimum make 'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation.'" *United States v. Oehne*, 698 F.3d 119, 122–23 (2d Cir. 2012) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, (1991)) (emphasis omitted). Put another way, the "privilege must be affirmatively asserted." *United States v. Medunjanin*, 752 F.3d 576, 585–87 (2d Cir.), cert. denied, 135 S. Ct. 301 (2014). Indeed, "the interrogation must cease until an attorney is present only '[i]f the individual states that he wants an attorney.'" Id. (quoting *Moran v. Burbine*, 475 U.S. 412, 433 n. 4 (1986) (internal quotation marks omitted) (emphasis in *Burbine*)). The bare reference to a lawyer, therefore, is not sufficient to invoke the right to counsel. *Davis v. United States*, 512 U.S. 452, 462 (1994) ("Maybe I should talk to a lawyer" was "not a request for counsel"); *Diaz v. Senkowski*, 76 F.3d 61, 64 (2d Cir. 1996) ("Do you think I need a lawyer" not a "clear statement" of intent to invoke counsel). Of particular relevance here, "a suspect's statement that he 'was going to get a lawyer' ha[s] been found to be insufficient to constitute an unambiguous request for counsel." *Oehne*, 698 F.3d at 124 (quoting *United States v.*

13

*Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990)). The Government need only prove that the defendant's waiver of rights was knowing and intelligent by a preponderance of the evidence. *Scarpa*, 897 F.2d at 68 (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

**The Traffic Stop Satisfied 4th Amendment Requirements**

There is but one issue with respect to the traffic stop: Did Lights stop at the stop sign or proceed through it without stopping? The resolution of this issue turns entirely on the credibility of Lights' affidavit as opposed to the testimony of Officers Noonan and Hernandez. The Officers were entirely credible, and Lights' self-interest was apparent and his affidavit uncorroborated.

The NYPD Anti-Crime Unit performed a textbook operation, receiving information about violations of law from a victim, conducting surveillance, and complying carefully with the requirements surrounding apprehension and arrest after observing a violation of law.

14

The Officers were experienced, the conditions clear, the view of Lights' driving unobstructed. Their testimony was consistent, and unimpeached in any significant detail.

Lights' unsupported assertion that the officer's observation was a belated fabrication because the precise location of the stop sign was not provided in the Bronx Criminal Complaint is not supported by *United States v. Ferguson*, 130 F. Supp.2d 560 (S.D.N.Y. 2001), upon which he relies. The facts relating to the complaint that preceded the federal criminal officers' conduct in *Ferguson* distinguish that case from this one.

There is no evidentiary basis, other than Lights' affidavit, to challenge the Officers' clear and credible testimony.

**The Search Warrant Was Supported by Probable Cause**

The observed conduct of Lights coupled with Agent Quinn's training and experience regarding the use of stash houses by drug dealers clearly provided a substantial basis for Judge Francis's determination that probable cause existed to

15

believe that narcotics and other evidence and instrumentalities of narcotics trafficking would be found at the Apartment.

A law enforcement agent's expert opinion "is an important factor to be considered by the judge reviewing a warrant application." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). Indeed, "the Second Circuit has found probable cause to search the homes of suspected drug dealers based substantially on evidence of the dealer's distribution activities outside the home and testimony from the affiant that drug dealers are likely to keep evidence of their crimes in their homes." See *United States v. Hoey*, No. 15 Cr. 229 (PAE), 2016 WL 270871 at *8 (S.D.N.Y. Jan 21, 2016) (emphasis in original) (citing *United States v. Benevento*, 836 F.2d 60, 70-71 (2d Cir. 1987)); *United States v. Cruz*, 785 F.2d 399, 405-06 (2d Cir. 1986)).

Agent Quinn's affidavit provides many statements of fact connecting Lights' drug possession to both the Apartment and the Store. The evidence of the black plastic shopping bag Lights was carrying that was later found containing marijuana in the Vehicle, the recovered firearm, and the depiction of the

16

Store on the internet all connected drug activity with the Store and the Apartment.

**Lights Waived His Right to Counsel**

The video of Lights' questioning shows that, at most, Lights indicated that he would like to call an attorney at some point in the future. This is virtually the same formulation considered and rejected as insufficiently clear to trigger the right to counsel in *United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990). Moreover, the video shows, and Lights does not contest, that he understood each and every one of his rights recited to him by the NYPD detective. Light even offered the detective an explanation for why he had decided to go ahead with the questioning: "the reason why I could answer questions is I could refuse anytime."

The interviewing detective in no way "ignored," as Lights claims, his request for counsel. When Lights asked "Can I call a lawyer?" the detective replied "Of course you can." When Lights tried to backpedal, the detective offered again, "If you want to call him, we can call him." This was not Lights' first experience with interrogation with respect to criminal conduct,

17

given his prior record and cooperation with the Government. His waiver was knowing and voluntary.

In light of the video evidence, Lights' motion to suppress the statement he made to the NYPD officers after being advised of and waiving his rights is denied.

18

**Conclusion**

Based upon the findings and conclusions set forth above, Lights' Motion to Suppress the Evidence is denied in its entirety.

It is so ordered.

**New York, NY**
**September 7, 2016**

ROBERT W. SWEET
U.S.D.J.

19